IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JAMES ROSS FINCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 308-108 |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

James Ross Fincher ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") payments under the Social Security Act. Upon consideration of the briefs submitted by counsel, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.  **BACKGROUND**

Based upon claims of disability dating back to November 30, 2003, Plaintiff applied for DIB with a protective filing date of July 2, 2004. Tr. ("R."), p. 53. The Social Security

Administration denied his original claims and his request for reconsideration. R. 38, 39, 41-44, 47-50. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On April 18, 2007, the ALJ held a hearing at which Plaintiff, who was represented by his attorney, and a vocational expert ("VE") testified. R. 351-89. Thereafter, on June 14, 2007, the ALJ issued an unfavorable decision. R. 14-20. Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability (20 CFR § 404.1520(b)). The claimant worked briefly – approximately 2 weeks in March 2004 – after his onset but was forced to stop due to his medical condition. Consequently, this work activity constitutes an unsuccessful work attempt.

2. The claimant has the following severe impairments: fracture of lower limbs and diabetic neuropathy (20 CFR § 404.1520(c)). Claimant's carpal tunnel syndrome has not been shown to be a severe impairment for at least 12 consecutive months during the period under consideration.

3. Step Three of the sequential process addresses whether the claimant has an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR § 404.1520(d)). It appears that the ALJ, after identifying Plaintiff's severe impairments determined that Plaintiff did not meet or medically equal one of the listed impairments because the ALJ turned his analysis to Plaintiff's residual functional capacity determination.

4. The claimant has the residual functional capacity to perform a full range of medium exertional work as defined in 20 CFR § 404.1567(c).[1] The claimant is able to perform past relevant work (20 CFR §§ 404.1565). Based on vocational expert testimony, the claimant is capable of performing past relevant work as sales person,

---

[1]Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c).

2

auto parts (D.O.T. # 273.357-030) as generally and actually done; electrical mechanic (D.O.T. # 824.261-010) as generally done; electrician maintenance (D.O.T. # 829.269-018), as generally and actually done; and television technician (D.O.T. # 828.261.022), as actually done. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2003 through the date of this decision. (20 CFR 404.1520(f)).

R. 14-20.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting that the case be remanded to the Commissioner for further consideration. Plaintiff now argues that the ALJ: (1) failed to consider Plaintiff's obesity, failed to consider the side effects of Plaintiff's medications, and failed to consider Plaintiff's use of a cane, (2) made findings that were internally contradictory, and (3) erred in his finding that Plaintiff can perform "medium" work because this finding is not supported by substantial evidence. See generally Pl.'s Br.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering

3

whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, re-weigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails

either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Failure to Consider Obesity and Medication Side Effects

Plaintiff first argues that the ALJ failed to consider Plaintiff's obesity and the side effects of his medication in reaching his disability determination. Turning first to Plaintiff's obesity argument; medical records submitted in his administrative proceedings indicate that he is five feet and four inches tall and weighs between 193 and 207 pounds. R. 17, 63, 273, 348, 355. His body mass index ("BMI") ranged between 33.1 to 35.5.[2] Pl.'s Br., p. 16. According to Social Security Ruling ("SSR") 02-1P, "[t]he Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40."

Yet high BMI is not always correlated to excess body fat; "it is possible for someone whose BMI is below 30 to have obesity if too large a percentage of the weight is from fat. Likewise, someone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle." SSR 02-1P. In this case, Plaintiff's BMI would place him falling with in the rage of the Level I and/or Level II categories.

---

[2]BMI is calculated by dividing a person's weight, in kilograms, by the square of a person's height in meters. Plaintiff does not cite, and the Court is unaware, of any calculation of Plaintiff's BMI in the record.

5

The administrative record is largely devoid of references to Plaintiff's obesity and only refers to Plaintiff's obesity in passing. R. 337, 339. The only other reference to obesity in the record was a statement made by Gerardo Guzman, M.D., a consultative examiner of Plaintiff for the state agency. Dr. Guzman stated in his report that Plaintiff is a fifty-four-year-old white male patient, some obese, right handed and married twice. R. 272, 273. Plaintiff argues that the ALJ did not sufficiently mention obesity in his findings.[3] Notably, Plaintiff did not mention obesity as a condition contributing to his physical limitations in his application for disability or during his hearing with the ALJ. Nevertheless, Plaintiff now urges the Court to remand the case to the ALJ for consideration of his obesity.

SSR 02-1p stands for the proposition that because Plaintiff's weight fell within the applicable definition of obesity, his obesity should be considered, among other impairments, because it can cause further degradation of Plaintiff's physical capacity, especially in the presence of certain impairments. See SSR 02-1p. SSR 02-1p recognizes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal system." Obesity may be considered a "severe" impairment when it limits an individual's physical or mental ability to do basic work activities. Such an assessment of severity is made on an individualized basis instead of through a body mass index guideline or descriptive term such as "morbid" or "extreme." Id. An ALJ should assess the effect that obesity has on exertional, postural, and social

---

[3]Notably, the ALJ stated that Plaintiff is 5'4" in height and weights 193 pounds. R. 17.

functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. Furthermore, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Id.

However, as with the general severity standard, a mere diagnosis of obesity does not equate with a finding of severity. Wind v. Barnhart, 133 Fed. App'x 684, 690-91 (11th Cir. 2005) (ALJ correctly determined obesity non-severe because it did not "cause further degradation" of her residual functional capacity). A diagnosis or a mere showing of "a deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the claimant must show the effect of the impairment on her ability to work. Id. (citing McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). Similarly, Plaintiff's BMI is not determinative. See SSR 02-1p. Rather, the record must contain evidence demonstrating that Plaintiff's obesity affected his ability to perform the full range of sedentary or limited range of light work activities. Id.

Although it might have been better for the ALJ to specifically address Plaintiff's obesity, other courts have found that an ALJ did not err in failing to do so in similar circumstances. See Forte v. Barnhart, 377 F.3d 892, 896-97 (8th Cir. 2004) (concluding ALJ did not err by failing to address obesity where although treating doctors noted that the plaintiff was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and the plaintiff did not testify that his obesity imposed additional restrictions). Here, Plaintiff has not cited to any entry in the record that provides

7

that his obesity has imposed additional work-related limitations.[4] Furthermore, the Court notes that Plaintiff's obesity was identified by Dr. Guzman, and that two consultant non-examining physician who determined that Plaintiff was not disabled and capable of performing medium work had relied on the record which included Dr. Guzman's report. In fact, Dr. Carol Silver, the state disability determination services medical consultant specifically relied on Dr. Guzman's report. R. 272-75, 276-83. Here, the ALJ relied on the determinations of the medical reviewer in reaching his findings, even though he did not explicitly address obesity in those findings. As noted above, while the ALJ's determination on obesity ideally would be a part of his written report, the Court does not find that the failure to address a condition in his written report that was not raised either implicitly or explicitly by Plaintiff to be error.

The Court turns next to Plaintiff's argument that the ALJ failed to consider the side effects of Plaintiff's medication. Of Plaintiff's stated grounds for relief, the Court bases its recommendation for remand on the conclusion that the ALJ failed to consider adequately the side effects of Plaintiff's medications,[5] side effects reported as among other things, insomnia, drowsiness and hallucinations. R. 111, 120, 366.

---

[4]To the extent Plaintiff attempts to argue that the recommendation of Cherilyn Zellner, M.D., to follow the DASH diet supports his claim that the ALJ failed to consider his obesity, his argument fails. As acknowledged by Plaintiff, "The DASH diet was "developed by the US National Institutes of Health to lower blood pressure without medication." Pl.'s Br., p. 11 n.3.

[5]The fact that Plaintiff was taking medication for his pain is not in dispute. The record reveals that Plaintiff was taking Extra Strength Motrin and Tylenol, Ultracet, and Darvocet. R. 111, 347.

An ALJ fails in his duty to develop fully the record when he does not make findings about the effect of prescribed medication on a claimant's ability to work.[6] Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); see also Lacy v. Barnhart, 309 F. Supp.2d 1345, 1352 (N.D. Ala. 2004) (reversing denial of benefits where, *inter alia*, ALJ "failed to consider the effects of the side effects of plaintiff's medication"). As the Eleventh Circuit has explained, "It is conceivable that the side effects of medication could render a claimant

---

[6]The Commissioner characterizes the ALJ's treatment (or non-treatment) of medicinal side effects as an issue of credibility. Comm'r Br., pp. 9-11. However, as described herein, the failure to analyze fully the possible side effects of medication is a failure to develop properly the record. Once the record is fully developed on the issue of medication side effects, the ALJ will have the opportunity to make a credibility determination concerning the severity of any side effects and the impact those effects may have on Plaintiff's ability to work. The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are partially credible. It remains to be seen whether the issue of medication side effects will change that conclusion. This Court declines the invitations of both Plaintiff and the Commissioner to leapfrog the administrative fact-finding function and make a conclusive determination at this point, prior to full development of the record.
Of course, on remand, any credibility determinations about the extent of such an impact of medicinal side effects on the ability to work must comport with the legal standards applicable in this Circuit. Under the Eleventh Circuit's pain and subjective complaints standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). When discrediting a claimant's subjective allegations of disabling pain, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*). That is, "[t]he credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

9

disabled or at least contribute to a disability." Cowart, 662 F.2d at 737. The court in Cowart went to on to quote with approval the following language from a First Circuit case:

> The present record contains no medical evidence regarding whether appellant's medication was in "unusually large doses" or whether its side effects might conceivably be disabling. While appellant's claim might be exaggerated, a layman is in no position to make any such determination on this record. It would have been appropriate for the administrative law judge to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question. At [the] very least, the administrative law judge should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored.

Id.[7] (internal citations omitted).

Here, Plaintiff identified side effects of his medication in writing. R. 88, 111, 120. In addition, at the hearing before the ALJ, Plaintiff testified about taking Ultracet and Darvocet and how their respective side effects affected him.[8] R. 366. Despite all of these alerts to the possible impact of medicinal side effects, the ALJ's written decision failed to make any mention of them.

---

[7]The Court recognizes that the ALJ in Cowart had a "special duty" to develop the record because the claimant, unlike Plaintiff, was not represented by counsel at her administrative hearing. 662 F.2d at 735. However, the court in Cowart also specifically stated that an ALJ has a basic obligation to develop a full and fair record, even if the claimant is represented by counsel. Id.; see also Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996) (per curiam) (stating that ALJ is "duty-bound to develop a full and fair record"). Given that Plaintiff made written notation of side effects and testified to the existence of some side effects at the hearing, and as the ALJ himself questioned the VE about the impact of medicinal side effects on the ability of a claimant to do the jobs identified as available for Plaintiff, the Court comfortably concludes that the duty to address reported side effects from Plaintiff's medicine fell within the ALJ's basic obligation to develop a full and fair record.

[8]Plaintiff testified that he does not take Darvocet during the day because "it is a narcotic, I've been trying to limit the Darvocet, just for that reason. I could go through the day without feeling much pain, but then I'm not good for anything else because I am so sleepy." R. 366-67.

10

The ALJ noted in his opinion that "January 29, 2004 treating source records show that [Plaintiff] was 'only on Tylenol Extra Strength for pain.'" R. 17. The ALJ also noted that the medical evidence of record does not document that Plaintiff complained of chronic severe pain without relief from Extra Strength Tylenol and Motrin. R. 19. That is all the ALJ had to say about Plaintiff's medication. In fact, in recounting Plaintiff's hearing testimony, the ALJ wholly omitted any mention of Darvocet or Plaintiff's reported drowsiness from taking the medicine.

The Commissioner does not confront Plaintiff's argument head on, choosing instead to argue that because Plaintiff presented no medical documentation corroborating his claims of suffering from medication side effects, and because over-the-counter medications were effectively relieving his pain, the ALJ did not err in failing to credit Plaintiff's allegations on this issue. Comm'r Br., p. 10. Putting aside for a moment the issue of "crediting" Plaintiff's testimony about side effects, at a more basic level, the ALJ did not acknowledge the possibility of, let alone analyze the impact of, medication side effects. Indeed, the Commissioner acknowledges that in January 2005, Plaintiff was placed on Ultracet, a pain medication. However, the Commissioner again maintains that the ALJ's failure to credit Plaintiff's complaint of medication side effects is appropriate with respect to the period of time commencing with Plaintiffs alleged disability onset date through January 20, 2005, when Plaintiff was prescribed Ultracet. The Commissioner's attempt to gloss over the ALJ's failure to develop fully and analyze this issue must fail.

Whether Plaintiff's allegations of side effects can or cannot be corroborated is not an issue for this Court to decide. Stated otherwise, this Court cannot now engage in an

administrative review that was not done in the first instance by the Commissioner. Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). Moreover, as the record has not been fully developed on this issue, any conclusions drawn on this incomplete record would be premature. The law requires the Commissioner to provide a well-reasoned, well-articulated decision. Without such an analysis, the federal courts are unable to provide claimants with sound, meaningful review of the administrative decision. The Court cannot second-guess what the ALJ may have been thinking or may have intended to consider. In this instance the ALJ's decision does not adequately consider the medication side effects reported by Plaintiff. Therefore, this case should be remanded for further proceedings.

### B. Remaining Contentions

Because the Court is recommending a remand for full development of the record concerning the side effects of Plaintiff's medication, the Court need not address Plaintiff's remaining contentions in detail. Of course, on remand Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law. However, the Court is compelled to comment on one other point in Plaintiff's briefing. According to Plaintiff, the ALJ erred in failing to consider that Plaintiff was required to use a cane in his determination of Plaintiff's RFC. Pl.'s Br., p. 15.

Social Security Ruling 96-9p states in relevant part:

Medically required hand-held assistive device: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e.,

whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

SSR 96-9p. Thus, in order for the ALJ to find Plaintiff's use of a cane as medically necessary, there must be medical documentation establishing a need for the cane. The ALJ's decision mentioned Plaintiff's use of a cane; the ALJ noted that in January 9, 2004, Plaintiff required the use of a device (e.g., cane) to walk alone or human supervision or assistance to negotiate stairs or steps or uneven surfaces. R. 17. However, the ALJ also noted that the record established that Plaintiff could ambulate without the cane. For example, the ALJ provided that in June 2004, Plaintiff's range of motion of the knee had improved as had his subtalar motion; his ambulatory limp had decreased but was still present; and there was no indication that Plaintiff was using any assistive device at the time either in entering the doctor's office or during the exam. R. 17. The ALJ further noted that during a September 15, 2004 consultative examination performed by Dr. Gerardo Guzman, Plaintiff was able to walk without a cane limping from the left lower extremity ([Plaintiff] alleges that he ambulates with a cane due to pain and for balance)." R. 17. Additionally, the ALJ noted that Plaintiff was able to climb onto the examining table without any assistance and that Plaintiff was able to stand on his heels and tip toes without any difficulty. R. 18.

Thus, the ALJ complied with SSR 96-9p and considered the particular facts of Plaintiff's case and determined that Plaintiff's use of a cane was not medically necessary.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.[9]

SO REPORTED and RECOMMENDED this 26th day of January, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[9] The Court notes that Plaintiff requests, if in the event his case is remanded and he is awarded benefits, an extension of time of thirty (30) days after the date of the Social Security closeout letter to file for fees under 42 U.S.C. § 406(b). Pl.'s Br., p. 20. That request must be addressed by the presiding district judge at the time that a judgment is entered in this matter.

14